FILED

2013 Jun-07  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
(NORTHEASTERN DIVISION)**

| | |
|---|---|
| **HOMER LEE REECE, and** | ) |
| **NELDA REECE** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **Civil Action No.**_____ |
| **vs.** | ) |
| | ) |
| **INTUITIVE SURGICAL, INC.** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

COME NOW the Plaintiffs HOMER LEE REECE and NELDA REECE, by and through their undersigned counsel, to sue Defendant INTUITIVE SURGICAL, INC. for injuries they sustained from a surgical robot, designed, made, marketed, and sold by the Defendant.

## THE PARTIES

1.      The plaintiff HOMER LEE REECE is a resident of and domiciled in Jackson County, City of Bryant, and State of Alabama.

2.      The plaintiff NELDA REECE is a resident of and domiciled in Jackson County, City of Bryant, and State of Alabama.

1

3.     The defendant INTUITIVE SURGICAL, INC. (hereinafter:"INTUITIVE") is a foreign business corporation, duly organized and existing under and by virtue of the laws of the State of Delaware.

4.     Upon information and belief, the defendant INTUITIVE is a foreign corporation with its principal place of business being located in the State of California.

5.     Upon information and belief, at all relevant times Defendant INTUITIVE has transacted and conducted business in the State of Alabama and derived substantial revenue from interstate commerce.

## JURISDICTION AND VENUE

6.     Jurisdiction for this action in the United States District Court arises under 28 U.S.C. Sections 1332(a)(1) and 1332(c)(2) as this is a civil action based on complete diversity of citizenship in that the plaintiffs permanent residence and domicile is in the Northern District of Alabama and the defendant is a citizen of a foreign state. The amount in controversy exceeds $75,000 exclusive of costs and interest.

## GENERAL ALLEGATIONS

7.     Plaintiff HOMER LEE REECE, a 70-year old man with a history of prostate cancer presented for evaluation with Dr. Patrick Foley. Pursuant to evaluating HOMER LEE REECE, Dr. Foley informed HOMER LEE REECE that he needed to have a prostatectomy performed to treat his prostate cancer.

2

8.      Dr. Foley presented HOMER LEE REECE with information propounding the benefit of da Vinci robotic prostatectomy over all other methods of prostatectomy, including traditional methods. Based on the discussions with Dr. Foley about the benefits of using the da Vinci surgical robot, HOMER LEE REECE decided to proceed with the surgery.

9.      Dr. Foley recommended to HOMER LEE REECE that he undergo the robotic prostatectomy.  HOMER LEE REECE followed Dr. Foley's recommendations after being explained the risks and benefits of the robotic prostatectomy, as known by Dr. Foley.

10.     Based on the representations and recommendations made by Dr. Foley and the information provided to HOMER LEE REECE, the Plaintiff agreed to proceed with da Vinci robotic prostatectomy. Plaintiff HOMER LEE REECE underwent surgery on June 9, 2011 at Memorial Hospital, Chattanooga, Tennessee. During the course of the surgery HOMER LEE REECE sustained significant injuries to his intestines and small bowels by the use of the da Vinci surgical robot manufactured and sold by defendant INTUITIVE. The robotic surgery was converted to an open laparotomy surgery with repair of the lacerations and tears of the intestines and small bowels.

11.     Due to the lacerations and tears to his small bowels by the da Vinci robotic surgery, HOMER LEE REECE would spend the next forty-four days in the hospital.

12.    HOMER LEE REECE developed fevers, confusion, abdominal distention and tenderness due to his injuries.  Subsequent CT scans noted leaks from his small bowel.  Repairs were attempted on these leaks as they were resected and a Vac-Pac was placed.  Several days later, while still in the hospital, another surgery was performed to attempt to fix the damage done by the da Vinci surgical robot.  Following the subsequent surgery, one of the anastomoses broke down again and he required another incision and exploration with a Vac-Pac and a drain was placed in the anastomotic leak.

13.    HOMER LEE REECE, as a result of the injuries due to the da Vinci surgical robot would continue a very long, prolonged course requiring ventilations, multiple consultants, including Infectious Disease and Pulmonary.  As a result of his injuries, HOMER LEE REECE suffered through approximately eight different procedures and multiple Vac-Pacs.

14.    HOMER LEE REECE, as a result of the injuries caused by the da Vinci surgical robot ultimately developed bouts of sepsis, suffered abscesses and giant fistula.  Even after his forty-four day hospital stay as a result of the da Vinci robotic prostatectomy, HOMER LEE REECE has, despite additional and continued treatment, continued up to the present time to experience constant infections, openings of the fistula, multiple draining of fluid, skin grafts and is left with a large abdominal wound that must be constantly cared for and will leave him scarred and forever effected for the remainder

of his life.  The abdominal area is now paper thin and he is reduced to limiting himself to lifting no more than five pounds and must make very slow movements or risk potentially ripping his abdominal skin open.  He will continue to be at risk of puncture wounds as well as his abdominal skin potentially ripping open.

15.     Through this time period HOMER LEE REECE has been unable to maintain normal intimate relationships with his spouse, NELDA REECE and has suffered emotional distress.

16.     Due to the injury sustained to his intestines and small bowels during the da Vinci Robotic Prostatectomy, Plaintiff HOMER LEE REECE had to have multiple additional operations and has suffered pain, loss of function, emotional distress, and permanent injury.

17.     Defendant INTUITIVE is a Delaware corporation with its principal place of doing business in Sunnyvale, CA.

18.     Defendant INTUITIVE is a publically traded company on the NASDAQ exchange, with a current market value of more than two billion dollars.

19.     Defendant designed, manufactured, tested, sold, promoted and labeled the da Vinci robotic products.

20.     On its website defendant asserts that it is the global technology leader in surgical robotic products.

21.     The said robotic device is used in hospitals for a variety of surgeries, including prostatectomies.

22.     Defendant has promoted its device as (a) safe, and (b) safer than other comparative methods of surgery including, in the case of prostatectomies.

23.     Defendant utilizes prominent websites aimed at consumers, seeking to create demand for the use of its robotic device by patients who consult surgeons.

24.     Defendant sold its device through a calculated program of intimidation and market management, forcing hospitals and physicians to purchase it in order to appear competitive, and creating a fear in their minds that if they did not have this technology they would lose business to competitors.

25.     Defendants reinforced its calculated program, as stated in the preceding paragraph, by placing, on its website for potential patients, names of certain physicians who have performed 20 surgeries with the device.

26.     The use of defendant's robotic device in surgery presents substantial risks of complications and injuries, including burns, tears, dehiscences, bleeding, hematomas, sepsis, and fistulas.

27.     More specifically, defendant's robotic device can cause damage to the bowel, blood vessels, arteries, ureters, and bladder.

28.     In addition, due to lengthened time of surgery, patients are unnecessarily exposed to anesthesia for a dangerous period of time.

29.     On occasion these complications and injuries cause and/or contribute to the untimely and premature death of the patient.

30.     Defendant is aware of the aforesaid risks and complications associated with the use of the said robotic device.

31.     Defendant does not provide adequate warnings to physicians and patients about the risks and complications associated with the use of its robotic device.

32.     Defendant has not done, nor sponsored, adequate testing on its said device before and after marketing it to determine whether in random tests its said device is either safer or more effective or otherwise superior to other surgical and laparoscopic methods to which it compares itself .

33.     Defendant has not done adequate post marketing surveillance of complications and injuries that have occurred in actual practice.

34.     Defendant has not done, nor sponsored, any testing as to long-term outcomes, in comparison to other surgical and laparoscopic methods.

35.     Defendant has not revealed, through publications or reports to the Food and Drug Administration and other governmental bodies, the true extent of complications and injuries, which have occurred in actual practice.

36.     Defendant has suppressed reports and complaints of complications and performance errors due to the use of its said device.

37.     Defendant does not adequately train physicians nor proctor them properly on the use of its device, thereby inducing them to cause complications and injuries, which would be avoided in the hands of properly trained physicians.

38.     Defendant represents that they will have skilled technicians in the operating room or on emergency call in the event of problems arising with its said device, but often has neglected to do so.

39.     Defendant has over-promoted its device to hospitals, physicians and the public, including potential consumers, combined with minimizing the risks and complications associated with its use.

40.     The device is defective in that it relies upon the use of monopolar energy to cut, burn and cauterize tissue, whereas safer methods are available such as bipolar energy and ultrasonic energy, which would reduce substantially the risk of complications.

41.     The device has inadequate insulation for its arms thereby allowing electrical current to pass into tissue outside of the operative field.

42.     The insulation on the shafts of the said device becomes torn and worn in places, without the awareness of the physician user, allowing electrical current to pass into the tissue outside of the operative field, causing damage.

43.    Defendant has failed to warn users and consumers of the said robotic device about the inadequate insulation on the arms and the potential for electrical current to pass into tissue outside of the operative field.

44.    Due to design defects, defendant's devices have malfunctioned during the course of operative use causing injury, including the necessity of converting the procedure into open surgery.

45.    Defendant has failed to warn users and consumers of its said device of the design flaws stated in the preceding paragraphs, although it has reached out directly to consumers to promote its asserted advantages.

46.    Defendant had specific knowledge and awareness of the dangers of monopolar current and that there were safety modalities commercially available that could have greatly diminished or eliminated some of these risks, yet the Defendant elected not to include these safety features on the da Vinci Robotic Prostatectomy platform.

47.    Defendant has obtained and continues to maintain approval of the uses of its device from the Food and Drug Administration by failing to fully inform them of its knowledge of risks and complications associated with the use of its device.

## FIRST CAUSE OF ACTION-PRODUCT LIABILITY

48.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

49.     Defendant placed into the stream of commerce its aforesaid device which was defective in design, as previously pleaded.

50.     Defendant owed Plaintiffs a duty to exercise reasonable care when designing, testing, manufacturing, marketing, advertising, promoting, distributing, and/or selling da Vinci Robots for prostatectomies.

51.     At all relevant times to this action, Defendant owed a duty to properly warn Plaintiff, the medical community, and the public of the risks, dangers and adverse side effects of the da Vinci Robotic prostatectomy platform.

52.     Defendant breached its duty by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of da Vinci Robotic Surgery, as set forth below:

a.      Failing to test the da Vinci Robotic Prostatectomy properly and thoroughly before promoting the robotic surgical platform using monopolar current to the market;

b.      failing to analyze properly and thoroughly the data resulting from the pre-marketing tests of monopolar current used in the da Vinci Robotic Prostatectomy;

c.      failing to report to the FDA, the medical community, and the general public those data resulting from pre- and post-marketing tests of the da Vinci Robotic prostatectomy platform which indicated risks associated with its use;

d.      failing to conduct adequate post-market monitoring and surveillance of post-surgical complications associated with the da Vinci Robotic prostatectomy platform using monopolar current;

e.      failing to conduct adequate analysis of adverse reports;

f.      designing, manufacturing, marketing, advertising, distributing and promoting the da Vinci Robotic prostatectomy directly to consumers, including Plaintiff, without adequate warning of the significant and dangerous risks of monopolar current and the da Vinci Robotic prostatectomy Platform and without proper instructions to avoid the harm which could foresee ably occur as a result of using monopolar energy on the existing da Vinci Robotic Prostatectomy platform;

g.      failing to exercise due care when advertising and promoting da Vinci Robotic Prostatectomy;

h.      negligently continuing to manufacture, market, advertise, and promote da Vinci Robotic Prostatectomy after Defendant knew or should have known of the risks of serious injury and/or death associated with using monopolar current to perform certain aspects of the surgery including prostatectomies;

i.      failing to use due care in the preparation and development of the da Vinci Robotic Prostatectomy to prevent the aforementioned risk of injuries to individuals through the use of monopolar current;

j.      failing to use due care in the design of the da Vinci Robotic Prostatectomy platform with special regard to the insulation of the robotic arms and instruments to prevent the aforementioned risk of injuries to individuals during routine course of surgery;

k.      failing to conduct adequate pre-clinical testing and research to determine the safety of the use of monopolar current and the insulation of the robotic instruments to be used in robotic prostatectomy, with special regard to the reusing of the instruments up to ten times in ten different patients;

l.      failing to conduct adequate intra-operative surveillance and post-operative complication studies to determine the safety of the use of monopolar energy during the surgical robotic prostatectomy procedure taught by INTUITIVE SURGICAL INC., while defendant knew or should have known that intra-operative surveillance and post-operative complication analysis would be the only means to determine the relative risk of using monopolar current during important surgical steps when performing a robotic prostatectomy causing severe thermal injury to bladder, bowel and blood vessels, in the absence of clinical trials which

cannot be conducted for this purpose, and that such surveillance would be necessary for a due diligence program that would alert defendant to the need to change the technique for the use of monopolar current or to withdraw it from the market altogether;

m.      failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing of issues with monopolar energy and post-marketing surveillance of monopolar energy related injuries and complications to Plaintiff, consumers, the medical community, and the FDA;

n.      failing to accompany marketing materials promoting the da Vinci Robotic Prostatectomy platform using monopolar current with proper warnings regarding all possible adverse side effects associated with the use of the same;

o.      failing to use due care in the manufacture, inspection, and safety evaluation of the da Vinci Robotic Prostatectomy platform to prevent the aforementioned risk of injuries to individuals who underwent a da Vinci Robotic Prostatectomy;

p.      failing to use due care in the promotion of da Vinci Robotic Prostatectomy to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

q.      failing to use due care in the sale and marketing of the da Vinci Robot to prevent the aforementioned risk of injuries to individuals who were to undergo robotic prostatectomy;

r.      failing to use due care in the selling of the monopolar scissors to prevent the aforementioned risk of injuries to individuals who underwent da Vinci Robotic Prostatectomy;

s.      failing to provide adequate and accurate training and information to the sales representatives who sold the da Vinci Robot;

t.      failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of the da Vinci Robot for prostatectomy;

u.      failing to conduct or fund research into the development of safer robotic surgical instruments which would pose the least risk of causing severe thermal injury to the bowel, bladder and blood vessels;

v.      failing to educate healthcare providers and the public about the safest use of the monopolar scissors in da Vinci Robotic surgery;

w.      failing to give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient using the da Vinci Robotic Prostatectomy platform and technique featuring the use of monopolar current; and,

x.      being otherwise reckless, careless and/or negligent.

53.     Defendant placed into the stream of commerce its aforesaid device, which was defective in its labeling and warnings, as previously pleaded.

54.     Defendant placed into the stream of commerce its aforesaid device, which was defective in its testing and approval, as previously pleaded.

55.     At the time the device left the possession of Defendant it was in an unreasonably dangerous and defective condition for application for robotic prostatectomy using monopolar energy.

56.     Despite the fact that Defendant knew or should have known that the da Vinci Robotic Prostatectomy platform using monopolar current had increased the risk of serious injury and/or death, Defendant continued to promote and market the da Vinci Robotic Prostatectomy to consumers, including Plaintiff, when safer and more effective methods of treatment were available.

57.     The Defendant designed, tested, manufactured, packaged, marketed, distributed, promoted, and sold the da Vinci Robot, placing the da Vinci Robotic Prostatectomy into the stream of commerce.

58.     The da Vinci Robot was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold,

packaged, supplied and/or distributed by Defendant in a defective and unreasonably dangerous condition to consumers, including the Plaintiff.

59.     The da Vinci Robot was expected to reach, users and/or consumers, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was manufactured and sold.

60.     Plaintiff's surgeon used the da Vinci robotic Prostatectomy platform including monopolar current as instructed by and certified by and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant.

61.     The da Vinci Robotic Prostatectomy platform was unreasonably dangerous in that, as designed, it failed to perform safely when used by ordinary consumers, including Plaintiff's surgeon, including when it was used as intended and in a reasonably foreseeable manner.

62.     The da Vinci Robotic Prostatectomy was unreasonably dangerous in that, as designed, the risks of serious injury and/or death, including bowel, bladder, or vascular injury, posed by its monopolar current risks exceeded any benefit the Robotic approach was designed to or might in fact bestow.

63.     The da Vinci Robotic Prostatectomy platform was unreasonably dangerous in that, as designed, it was dangerous to an extent beyond that contemplated by the medical community, and ordinary regulars, including the Plaintiff.

64.     The da Vinci Surgical Robot was defective in its design in that it neither bore, nor was packaged with, nor accompanied by, warnings adequate to alert the medical community, including Plaintiff's surgeon, to the risks described herein, including, but not limited to, the risk of serious injury and/or death, including bowel, bladder, or vascular injury, posed by its monopolar current risks. The da Vinci Robot was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the medical, hospital, operating room and/or scientific communities, and potential patients, including Plaintiff, of the potential risks and serious side effects associated with its use, thereby rendering Defendant liable to the Plaintiff .

65.     There were safer alternative energy modalities available including bipolar energy and ultrasonic energy.

66.     Monopolar energy, as used and taught on the da Vinci Robotic Prostatectomy platform, was unsafe for normal and reasonably anticipated use in performing the prostatectomy.

67.     In light of the potential and actual risk of harm associated with the use of monopolar energy so close to bowel, bladder and blood vessels, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the da Vinci Robotic Prostatectomy platform should not have been marketed in that condition.

68.     Although Defendant knew or should have known of the defective nature of its da Vinci Robotic Prostatectomy platform using monopolar current, it continued to design, manufacture, market, and promote the use of its da Vinci Robotic Prostatectomy platform so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by the continued use of monopolar energy on its robotic platform.

69.     Plaintiff could not, through the exercise of reasonable care, have discovered the risk of serious injury and/or death associated with and/or caused by the da Vinci Robotic Prostatectomy platform featuring monopolar current. Plaintiff, if aware of these additional risks, could have chosen surgical procedures with similar efficacies but without these additional risks. As a result, Plaintiff suffered the personal injuries described herein.

70.     Information given by Defendant to the medical community and to the consumers concerning the safety and efficacy of the da Vinci Robotic Prostatectomy platform, especially the information contained in the advertising and promotional materials, did not accurately reflect the serious and potentially fatal side effects.

71.     Had adequate warnings and instructions been provided, Plaintiff's surgeon would not have suggested a robotic approach, and Plaintiff would have had a much lower risk of the harmful side effects described herein.

72.     As a direct and proximate consequence of Defendant's negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiff, HOMER LEE REECE, sustained injuries and damages alleged herein.

73.     That by reason of the foregoing and Defendant's aforesaid conduct, among other things, the Plaintiff HOMER LEE REECE suffered injuries which caused him to undergo multiple additional surgeries, endured pain and suffering and will continue to do so in the future, has suffered mental anguish and will continue to do so in the future, has loss the pleasure of sexual activity, and has incurred medical expenses.

74.     Plaintiff has incurred and is liable for certain expenses, including hospital, surgical and medical treatment, transportation costs as a result of, among other things, Defendant's conduct.

75.     As a result of its said conduct, Defendant has become strictly liable to Plaintiff.

76.     Defendant's conduct in continuing to market, sell and distribute the aforesaid devices after obtaining knowledge they were defective and not performing as represented and intended, showed complete indifference to and/or a conscious disregard for the safety of others justifying an award of punitive damages for aggravating

circumstances in such a sum which will serve to deter Defendant and others from similar conduct in the future.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION-GENERAL NEGLIGENCE & NEGLIGENT

## TRAINING & PROCTORING & NEGLIGENT CERTIFICATION

77.     Plaintiff repeats, reiterates and realleges each and every allegation and cause of action contained herein as if the same were set forth more fully at length herein.

78.     Defendant was careless in the design, testing, manufacturing, labeling and promotion of its aforesaid device, as pleaded in previous paragraphs.

79.     In specific, Defendant failed to warn users and consumers of the risk of complications associated with the use of its said device, risks of monopolar current use, including the damage to the bladder, bowel and blood vessels; which was a proximate cause for Plaintiff's HOMER LEE REECE multiple surgeries and long term pain and suffering.

80.     Defendant took it upon itself to "train" and "Certify" Plaintiff's surgeon on the use of the da Vinci Robotic Prostatectomy platform using monopolar current. Upon belief the Defendant specifically trained Plaintiff's surgeon on the use of monopolar current via operative endohear scissors during the prostatectomy.

81.     Defendant did not properly proctor and/or properly instruct Plaintiff's surgeons and attending staff as to the safe use of its device nor how to detect complications which its said device causes and is known to cause.

82.     Defendant had a financial incentive to promptly train, proctor, and certify Plaintiff's surgeon without regard to whether or not Plaintiff's surgeon was truly properly trained, skilled, and competent on the da Vinci Robotic Prostatectomy platform. Defendant did so without providing any standardization of demonstrated competencies, instead choosing to qualify the large majority of surgeons in the fastest way possible in order to improve Defendant's sales.

**THIRD CAUSE OF ACTION-FRAUD**

83.     Plaintiff repeats, reiterates and realleges each and every allegation and cause of action set forth herein as if the same were set forth more fully at length herein.

84.     Defendant misrepresented the safety and comparative efficacy of its device, upon which Plaintiff's surgeons relied, to Plaintiff's detriment.

85.     Defendant misrepresented the safety and comparative efficacy of its device, upon which the hospital and surgery department where Plaintiff was operated on relied, in purchasing and using the device, to Plaintiff's detriment.

86.     Defendant was aware, or should have been aware, of the known dangers of monopolar current in regard to unsuspected current leaving the shaft of a poorly insulated instrument. Furthermore, Defendant suggested to hospitals that multiple uses of the robotic instruments could be done yet Defendant did so without regard to re-testing of the insulation along the shaft of their robotic instruments or at wrist of the robotic instrument.

87.     Defendant was aware, or should have been aware, of the known dangers of monopolar current in regard to capacitive coupling, which like insulation failure can cause a thermal injury to occur in adjacent structures like bowel, bladder, or blood vessel.

88.     Defendant was aware that there were safer energy modalities including ultrasonic energy and bipolar energy, yet maintained teaching the use of monopolar current in the da Vinci Robotic Prostatectomy. Defendant did so based on not wanting to pay for the cost of having to license these safer energy technologies.

89.     Defendant was also aware, or should have been aware, of the Active Electrode Monitoring System, or AEM Technology, which shields and monitors instruments continuously directing stray energy, the cause of stray electrosurgical burns, away from the patient. With the AEM system, the patient is never at risk for stray

electrosurgical burns due to insulation failure and capacitive coupling. Despite having specific knowledge of this safety system the Defendant chose not to purchase it for its da Vinci Robotic Prostatectomy platform using monopolar current.

90.     Further, Defendant concealed from consumers and users, including those mentioned in the preceding paragraphs, the risks of complications of which it was aware, which would have been material to consumers and users in making the decision to use the said device.

91.     Further, Defendant suppressed reports of adverse outcomes with the use of its device, which would have been material to consumers and users making the decision to use the said device.

92.     Further, Defendant over-promoted its device and minimized its risks, for the purpose of making sales of its device, its maintenance, and the use of replaceable parts, and skewed the cost-benefit ratio inaccurately in its favor.

93.     The said conduct was so willful, wanton, malicious and reckless that it merits the imposition of punitive damages.

## **FOURTH CAUSE OF ACTION-BREACH OF EXPRESS WARRANTY**

94.     Plaintiff repeats, reiterates and realleges each and every allegation and cause of action set forth herein as if the same were set forth more fully at length herein.

95.     Defendant made express warranties of safety to the buyers and consumers of the device utilized during Plaintiff HOMER LEE REECE'S surgery, upon which the buyers and users, as agents of Plaintiff HOMER LEE REECE, relied, to his detriment. Defendant expressly represented to the Plaintiff HOMER LEE REECE (and to other consumers and the medical community) that the da Vinci robotic prostatectomy was safe, efficacious and fit for its intended purposes, that it was of merchantable quality, that it did not produce any unwarned-of dangerous side effects, and that it was adequately tested.

96.     Defendant breached expressed warranties with respect to the da Vinci robotic prostatectomy in the following ways:

a.      Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, surgeon training sessions, publications, notice letters, and regulatory submissions that the da Vinci Robotic prostatectomy was safe, and fraudulently withheld and concealed information about the substantial risks or serious injury and/or death associated with using monopolar current on the existing da Vinci robotic platform;

b.      Defendant represented that the da Vinci Robotic Prostatectomy was as safe as and/or safer than alternative surgical methods, and fraudulently concealed

information which demonstrated that the da Vinci robotic prostatectomy approach was not safer than alternatives available on the market; and,

c.     Defendant represented that the da Vinci Robotic Prostatectomy was more efficacious than other alternative surgical methods, and fraudulently concealed information that it was not more efficacious than alternative surgical methods.

97.     Da Vinci Robotic Prostatectomy does not conform to Defendant's express representations, because it is not safe, efficacious, has numerous serious unwarned-of side effects, causes severe and permanent injuries including death, and was not adequately tested.

98.     The da Vinci Robotic Prostatectomy platform including the use of monopolar current did not perform as safely as an ordinary physician, as an agent of the patient, would have expected when used as intended or in a reasonably foreseeable manner.

99.     Plaintiff HOMER LEE REECE, his surgeon and others in the medical community, relied upon Defendant's express warranties, resulting in the Plaintiff's da Vinci Robotic Prostatectomy.

100.     Plaintiff, after ascertaining through his own injuries that the da Vinci Robotic Prostatectomy violated express warranties, hereby supply notice to Defendant INTUITIVE SURGICAL INC. of same through the filing of this lawsuit.

101.    As a direct and proximate consequence of Defendant's breach of express warranty and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiffs sustained injuries and damages herein.

102.    By selling the said device, Defendant made implied warranties of safety, merchantable quality, and fitness for use, which was breached when plaintiff HOMER LEE REECE was injured during surgery.

103.    As a further direct and proximate result of the acts of Defendant, Plaintiffs suffered emotional distress.

**WHEREFORE,** Plaintiffs demand judgment against Defendant and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION-BREACH IMPLIED WARRANTY

104.    Plaintiffs incorporate by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

105.    At all relevant and material times, Defendant manufactured, distributed, advertised, promoted, and sold the da Vinci Robot.

106.    At all relevant times, Defendant intended that the da Vinci Robot be used in the manner that the Plaintiff's surgeon in fact used it and Defendant impliedly warranted

the product to be of merchantable quality, safe and fit for such use, and was adequately tested.

107.    Defendant breached various implied warranties with respect to the da Vinci Robot including the particulars:

a.      Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the da Vinci Robotic Prostatectomy platform was safe and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using the da Vinci Robot with monopolar current;

b.      Defendant represented that the da Vinci Robotic Prostatectomy with monopolar current was as safe and/or safer than other alternative surgical approaches that did not include the use of the da Vinci Robot, and fraudulently concealed information, which demonstrated that the da Vinci Robotic Prostatectomy was not safer than alternatives available on the market; and,

c.      Defendant represented that the da Vinci Robotic Prostatectomy was more efficacious than other alternative surgical approaches and techniques and fraudulently concealed information, regarding the true efficacy of the robotic prostatectomy with monopolar current.

108.    In reliance upon Defendant's implied warranty, Plaintiff's surgeon used the da Vinci Robotic Prostatectomy platform as prescribed and in the foreseeable manner normally intended, recommended, promoted, instructed, and marketed by Defendant.

109.    Defendant breached its implied warranty to Plaintiff in that the da Vinci Robotic Prostatectomy platform with monopolar current was not of merchantable quality, safe and fit for its intended use, or adequately tested.

110.    As a direct and proximate consequence of Defendant's breach of implied warranty and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiffs sustained injuries and damages alleged herein including pain and suffering.

111.    As a further direct and proximate result of the acts of Defendant, Plaintiffs suffered emotional distress and loss of consortium.

**WHEREFORE,** Plaintiffs demand judgment against Defendant and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION-UNJUST ENRICHMENT

112.    Plaintiffs incorporate by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

113.   At all times relevant to this action, Defendant designed, advertised, marketed, promoted, manufactured, distributed, supplied, and/or sold the da Vinci Robot for prostatectomy use.

114.   Plaintiff HOMER LEE REECE'S surgeon's hospital purchased the da Vinci Robot from the Defendant for the purpose of using it for Robotic Prostatectomy. The same hospital purchased disposable and reusable instrument for the performing of HOMER LEE REECE'S surgery.

115.   Defendant has accepted payment from said aforementioned hospital for both the da Vinci robot used in HOMER LEE REECE'S surgery, but also for the routine maintenance and per surgery cost of additional items including disposable items.

116.   HOMER LEE REECE did not receive the safe and effective surgical product which he intended to purchase; nor did the hospital where HOMER LEE REECE had his surgery.

117.   It is inequitable and unjust for Defendant to retain this money because the Plaintiff did not in fact receive the safe and efficacious surgical procedure Defendant represented da Vinci Robotic Prostatectomy to be.

**WHEREFORE,** Plaintiffs demand judgment against Defendant and seek equitable relief, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION-LOSS OF CONSORTIUM

118.    Plaintiffs incorporate by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

119.    As a direct consequence of the injuries to the bowels sustained by HOMER LEE REECE while undergoing a da Vinci Robotic Prostatectomy, and the constant pain, formation of a fistula, inability to perform intercourse, inability to engage in the normal course of relationships and the emotional consequences; Plaintiff NELDA REECE has been deprived the normal companionship, company, affection, regard, assistance, comfort, sexual relations, and emotional stability from her husband HOMER LEE REECE.

120.    These physical and emotional consequences of the injuries have negatively impacted the quality and caused undue hardship to the marriage relationship.

**WHEREFORE,** Plaintiffs demand judgment against Defendant and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs prays for judgment against the Defendant as follows:

a.     Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to totally compensate Plaintiffs for all of their injuries and damages, both past, present and future;

b.     Special damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiffs for all of their injuries and damages, both past and present, including but not limited to, past and future medical expenses, lost income, loss of earning capacity, permanent disability, and pain and suffering;

c.     Restitution and disgorgement of profits;

d.     Punitive damages

e.     Attorneys' fees, expenses, and costs of this suit;

f.     Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

g.     Such other relief, monetary or equitable, as this Court deems necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

The Plaintiffs hereby demand a trial by jury on all Counts and as to all issues.

Date: June 7, 2013

                    Respectfully submitted,

/s/ C. Carter Clay
**C. Carter Clay**
ASB-2907-Y85C

/s/ Bobby J. Bell, Jr.
**Bobby J. Bell, Jr.**
ASB-3426-B63B

Attorneys for Plaintiff
**HOLLIS, WRIGHT, CLAY & VAIL, P.C.**
505 North 20th Street, Suite 1500
Birmingham, Alabama  35203
Telephone:    (205) 324-3600
Facsimile:    (205) 324-3636
E-Mail:       carterc@hollis-wright.com
              bob@hollis-wright.com